IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STS EXPRESS, LLC a/k/a ILLINOIS CARTAGE EXPRESS, INC., )<br>)<br>Plaintiff, )<br>)<br>) No. 19-cv-05718<br>v. )<br>) Judge Andrea R. Wood<br>TMR SERVICES, INC., et al., )<br>)<br>Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff STS Express, LLC ("STS"), also known as Illinois Cartage Express, Inc., sued Defendants TMR Services, Inc. ("TMR"), Suburban Teamsters of Northern Illinois Welfare and Pension Funds ("Funds"), and John S. Toomey, an attorney representing the Funds, in Illinois state court. In its complaint, STS asserted a claim for breach of contract against TMR and a claim for tortious interference with contractual relations against the Funds and Toomey. Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441 on the basis that the case presents a federal question over which this Court has original jurisdiction. STS has moved to remand the case to state court. (Dkt. No. 12.) For the reasons given below, STS's motion is denied.

## BACKGROUND

The Court ordinarily limits its inquiry on a motion to remand to the face of the plaintiff's complaint. *See Shannon v. Shannon*, 965 F.2d 542, 545 (7th Cir. 1992). But in this case, both of the Funds' arguments for removing the case to federal court concern the doctrine of complete preemption, which requires the Court to recharacterize state-law claims as federal-law claims if they fall within the scope of certain federal statutes. *See Oglesby v. RCA Corp.*, 752 F.2d 272, 276 (7th Cir. 1985). Because the parties' arguments concern complete preemption, the Court may

consider the notice of removal and the exhibits to the parties' papers to ensure that STS does not deprive Defendants of their right to a federal forum by artfully pleading its claims to omit facts that would create federal jurisdiction. *See Shannon*, 965 F.2d at 546; *Oglesby*, 752 F.2d at 277–78.

STS initially filed this suit in state court in Will County, Illinois, asserting a claim for breach of contract against TMR (Count I) and a claim of tortious interference with contractual relations against the Funds and Toomey (Count II). (Notice of Removal, Ex. A, Compl. ¶¶ 16–23 ("Compl."), Dkt. No. 1-1.) In its complaint, STS alleges that from January 2018 to August 2018, it acted as a transportation contractor for TMR.[1] (*Id.* ¶ 6.) STS claims that it transported construction materials and debris for TMR and, at first, TMR paid STS's invoices within 30 days of receipt. (*Id.*) STS then provided TMR with invoices for $35,806.46 for services provided from May 2018 to August 2018. (*Id.* ¶¶ 8–9.) According to STS, TMR did not pay those invoices within 30 days of receiving them and, in September 2018, STS's attorney made a written demand on TMR for payment of the outstanding balance. (*Id.* ¶ 10.) Thereafter, STS allegedly made several additional demands for payment but TMR refused to pay. (*Id.* ¶ 11.) Instead, TMR told STS that it was withholding the amount due because of a written demand Toomey had made to STS on behalf of the Funds. (*Id.*)

Specifically, as alleged, the Funds demanded that TMR withhold money it owed to STS because STS was delinquent in making required contributions to the Funds. (*Id.*) In a letter to TMR, the Funds noted that because of the collective bargaining agreement ("CBA") to which TMR and the Teamsters Local 197 ("Union") were parties, TMR was only allowed to hire other signatories to the CBA as subcontractors. (Notice of Removal, Ex. A, Sub-Ex. C, Union Letter,

---

[1] No party has submitted any written contract between STS and TMR as an exhibit.

Dkt. No. 1-1.) The CBA requires signatories to make certain contributions to the Funds on behalf of their employees. (*Id.*) The Funds informed TMR that STS had failed to make any contributions. (*Id.*) Therefore, if STS was a signatory to the CBA, it was delinquent in its contributions. But if STS was not a signatory to the CBA, then TMR had breached the CBA and TMR would owe money to the Funds.

In STS's view, however, the Funds' demand was illegitimate because STS was not a signatory to the CBA when it was providing services to TMR. (*Id.* ¶¶ 12–13.) In the demand letter it sent to TMR, STS stated that it had terminated any contractual relationship with the Union in May 2017. (*Id.*, Ex. A, Sub-Ex. B, Demand Letter, Dkt. No. 1-1.) STS made the same point in a September 2018 letter to the Funds. (*Id.*, Ex. A. Sub-Ex. D, Letter to Funds, Dkt. No. 1-1.) STS believes that the Funds knew that STS had no obligations under the CBA during the relevant time period. (Compl. ¶¶ 12–13.) STS informed TMR and the Funds of its view in writing, but the Funds continued to demand that TMR withhold funds that it owed to STS. (*Id.* ¶ 14.) At the time that STS filed suit in state court, TMR still had not paid STS for the services it had provided. (*Id.*)

After STS filed this suit in Illinois state court, the Funds removed it to this Court on the basis that STS's claims presented a federal question.[2] (Notice of Removal, Dkt. No. 1.) STS, in turn, has moved to remand the case back to state court on the basis that its complaint could not have been filed in this Court as an original matter (Dkt. No. 12). As exhibits to their response in opposition to STS's motion, the Funds attached an unsigned copy of the relevant CBA and a signature page that STS and the Union signed in April 2016. (Notice of Removal, Exs. B–C, Dkt. Nos. 1-2, 1-3.) STS admits in its motion to remand that it had, at one point, been a signatory to the CBA. (Mot. to Remand at 2, Dkt. No. 12.) But it contends that it made a timely withdrawal from

---

[2] TMR and Coomey consented to the removal. (Dkt. Nos. 8, 19.)

the CBA. STS has submitted no exhibits that corroborate its position that it withdrew from the CBA before it became a subcontractor for TMR.

Meanwhile, TMR has answered the Complaint and asserted two counterclaims for interpleader against STS and TMR. (Dkt. No. 7.) TMR and Toomey each filed a motion to dismiss Count II against them. (Dkt. Nos. 11, 22.) STS has not yet responded to either of those motions, so this ruling solely concerns STS's motion to remand.

## DISCUSSION

Removal from state court is governed by 28 U.S.C. § 1441(a), which states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." Removal is proper only if the plaintiff could have brought the case in federal district court in the first instance. *See Hart v. Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan*, 360 F.3d 674, 678 (7th Cir. 2004). The Funds, as the party seeking removal, has "the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in the state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

The Funds seeks to invoke this Court's federal question jurisdiction. *See* 28 U.S.C. § 1331. Specifically, they contend that this Court has original jurisdiction over the claims in STS's complaint because two federal statutes—the Labor-Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA")—completely preempt STS's tortious interference claim against the Funds. If Defendants are correct as to either federal statute, then this Court has original federal question jurisdiction over Count II. *See Shannon*, 965 F.2d at 545; *Oglesby*, 752 F.2d at 276. And the Court would then be able to exercise supplemental jurisdiction

over Count I. *See* 28 U.S.C. § 1367(a). STS, however, contends that neither statute completely preempts Count II.

    **I.**    **Complete Preemption Under ERISA**

The Funds' first argue that ERISA completely preempts STS's cause of action for tortious interference with contractual relations. Two provisions of ERISA create two different types of preemption.

The first type of preemption is conflict preemption as defined in 29 U.S.C. § 1144(a). That section provides that certain provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.* Conflict preemption is an affirmative defense to a state-law claim. Affirmative defenses that arise from federal law cannot form a basis for removal to a federal district court. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93 (1987); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10–11 (1983). Because this form of preemption cannot be a basis for removal, the Court will not address at this time whether conflict preemption applies to STS's claims. *See Rice v. Panchal*, 65 F.3d 637, 640 (7th Cir. 1996).

The second type of preemption is complete preemption as defined in 29 U.S.C. § 1132(a). That section is ERISA's civil enforcement provision, which provides various causes of action by which participants and beneficiaries in a plan, fiduciaries of a plan, employers, employee representatives, states, and the Secretary of Labor may sue to enforce ERISA. *Id.* If a state-law claims falls within the scope of § 1132(a), then the doctrine of complete preemption converts it into a claim arising under federal law, no matter how the plaintiff has pleaded the claim. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486–87 (7th Cir. 1996). Three factors are relevant for whether ERISA completely preempts STS's tortious interference claim: (1) whether

STS is "eligible to bring a claim" under § 1132(a), (2) whether STS's cause of action "falls within the scope of an ERISA provision that [STS] can enforce" via § 1132(a), and (3) whether STS's claim "cannot be resolved without an interpretation of the contract governed by federal law." *Id.* at 1487 (citing *Rice*, 65 F.3d at 641, 644).

Assuming that STS is an employer participating in a multiemployer plan covered by ERISA, STS would have the right to sue the plan administrator for equitable relief if the plan administrator failed to provide plan funding notices or the plan document. *See* 29 U.S.C. § 1132(a)(8), (11). But neither of those causes of action under ERISA are relevant to STS's suit against the Funds for damages for interfering with its contract with TMR. STS's claim therefore falls outside of the scope of any cause of action it has under 29 U.S.C. § 1132(a). Furthermore, it is not clear based on the current record to what extent the Court would have to consider a contract governed by ERISA or whether the CBA, which sets out contractors' obligations to contribute to the Funds, is a contract governed by ERISA. Accordingly, the Court cannot find that § 1132(a) gives this Court original jurisdiction over STS's tortious interference claim.

## II.     Complete Preemption Under the LMRA

The Funds' second argument is that the LMRA completely preempts STS's cause of action for tortious interference with contractual relations. The LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). That provision both grants the federal district courts jurisdiction over such suits and requires the courts to fashion a body of federal common law to govern contract disputes between employers and labor organizations. *See Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 450–51 (1957). As a result, if the "resolution

6

of a state-law claim depends upon the meaning of a collective bargaining agreement," then the LMRA completely preempts the state-law claim. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) (citing *Caterpillar*, 482 U.S. 386; *Avco Corp. v. Aero Lodge No. 375*, 390 U.S. 557 (1968)).

The doctrine of complete preemption under the LMRA applies to claims for breach of a CBA and to other claims "if resolution of those claims is sufficiently dependent on an interpretation of a CBA." *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 286 (7th Cir. 2001) (en banc). Therefore, the LMRA completely preempts state-law claims that are "inextricably intertwined with consideration" of a CBA. *Olson v. Bemis Co.*, 800 F.3d 296, 300 (7th Cir. 2015) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). In practice, that means the LMRA preempts a state-law claim if the Court would have to interpret the CBA to resolve an element of the plaintiff's claim. *See Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015). The Seventh Circuit has repeatedly held that the LMRA completely preempts state-law tort causes of action that cannot be resolved without an interpretation of a CBA. *See Healy*, 804 F.3d at 842 (tortious interference with contractual relations); *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 727 (7th Cir. 2000) (same); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993) (invasion of privacy); *Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 571 (7th Cir. 1989) (intentional infliction of emotional distress). The statute does not, however, preempt state-law claims for which the Court needs to make a "mere glance" at—not an interpretation of—a CBA to resolve an element of the plaintiff's claim. *Bentz Metal Prods.*, 253 F.3d at 289.

To state a claim for tortious interference against the Funds under Illinois law, STS must demonstrate (1) "the existence of a valid and enforceable contract" between STS and another

party, (2) the Funds' "awareness of this contractual relation," (3) the Funds' "intentional and unjustified inducement of a breach of the contract," (4) "a subsequent breach" by the party contracting with STS "caused by [the Funds'] wrongful conduct," and (5) damages.[3] *HPI Health Care Servs. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (citation and internal quotation marks omitted).

STS cannot prevail on the third element—the Funds' "intentional and unjustified inducement" of TMR to breach its contract with STS—without addressing the CBA. As alleged in the complaint, the Funds' reason for pressuring TMR to withhold money it owed STS was that STS was delinquent in its mandatory contributions to the Funds. Therefore, whether the Funds' conduct was justified turns on STS's obligations under the CBA. STS's primary argument appears to be that it validly withdrew from the CBA before it became a subcontractor for STS. But even that argument raises at least two questions that require an interpretation of a CBA: first, whether STS's withdrawal from the CBA was valid, and second, whether the CBA grants the Funds the power to require a contractor, like TMR, to make contributions to the Funds if it hires a subcontractor that is not a signatory to the CBA. It is, therefore, inevitable that the Court would have to interpret the CBA to resolve STS's tortious interference claim.

The Court's conclusion on this point follows from the Seventh Circuit's conclusion in *Douglas*, 877 F.2d at 571, which concerned intentional infliction of emotional distress ("IIED"). The tort of IIED requires the plaintiff to prove that the defendant's conduct was extreme and outrageous—a standard somewhat similar to the requirement that STS prove that the Funds' conduct was intentional and unjustified. *See id.* The Seventh Circuit in *Douglas* concluded that

---

[3] The Court applies the law of Illinois, the Court's forum state, to this state-law claim because no party has raised a choice-of-law issue. *See Healy*, 804 F.3d at 841 n.1.

8

the LMRA completely preempted an employee's IIED claim against her employer because it was not possible to resolve whether the employer's conduct was extreme and outrageous without interpreting the powers that the CBA granted to the employer. *See id.* at 571–72. In this case, the Court faces a similar situation in which it cannot resolve the question of whether the Funds' conduct was unjustified without determining the parties' rights and obligations under the CBA.

As the LMRA completely preempts STS's cause of action for tortious interference, this Court has federal question jurisdiction over Count II and supplemental jurisdiction over Count I, and the Funds' removal was proper.[4]

### CONCLUSION

For the reasons given above, STS's motion to remand (Dkt. No. 12) is denied.

Dated: September 30, 2021

ENTERED:

_____
Andrea R. Wood
United States District Judge

---

[4] The Court's ruling is limited to its subject-matter jurisdiction over the suit. The LMRA's complete preemption of the tortious interference claim does raise the question of whether STS can pursue that claim as currently pleaded against the Funds and Toomey. STS may face some barriers in that regard. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 310–12 (2010) (declining to decide if a party can bring a suit for tortious interference pursuant to 29 U.S.C. § 185(a)); *Kimbro*, 215 F.3d at 726–27 (holding that a plaintiff could not proceed on a tortious interference cause of action under 29 U.S.C. § 185(a)). But the Court will not address that issue until after the parties fully brief Defendants' motions to dismiss or STS files an amended complaint.